31 C.C.P.A.(Patents)

**BOILEAU v. GODFREY (two cases).**

Patent Appeals Nos. 4752, 4753.

Court of Customs and Patent Appeals.
July 6, 1943.

Rehearing Denied Oct. 4, 1943.

68

Norman E. H. Deletzke, of Chicago, Ill., for appellant.

George W. Hansen, of Chicago, Ill. (M. Hudson Rathburn, of Chicago, Ill., and Edwin R. Hutchinson, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

These are appeals in two interference proceedings from decisions of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter of all the counts in issue to the appellee.

The interferences involve an application of appellee, Serial No. 269,587, filed April 24, 1939, and two applications of appellant, Serial Nos. 249,056 and 313,369, filed January 3, 1939 and January 11, 1940, respectively.

The applications of appellant are assigned to Cherry-Burrell Corporation of Chicago, Illinois, and the application of appellee, to The Creamery Package Manufacturing Company, of Chicago, Illinois.

Pursuant to stipulation a single record has been filed and the issues will be disposed of in a single opinion.

Appeal No. 4752—Interference No. 78,490.

■ This interference involves the application of appellant, Serial No. 249,056, filed January 3, 1939, and the application of appellee, Serial No. 269,587, filed April 24, 1939. The appellee is the junior party and therefore has the burden of proving priority of invention by a preponderance of the evidence.

In his preliminary statement appellant alleges that the invention was first disclosed to others on or about January 25, 1937; that the first drawings were made on or about January 30, 1937; that the first written description of the invention was made on or about March 12, 1938, and that the invention was reduced to practice on or about November 1, 1937.

Appellee alleges in his preliminary statement that the first drawings of the invention were made on November 30, 1936, and on February 25, 1937; that between those two dates he first explained the invention to others; that in January and February, 1938, the first written descriptions of the invention were made by him and that a full-sized commercial device was successfully operated during the months of March, April and May, 1938, and that he began actively to exercise reasonable diligence in adapting and perfecting the invention between November 30, 1936, and February 1937.

Voluminous testimony was taken and a great number of exhibits were filed in evidence.

Each of the parties filed a motion under rule 109 to add a count to the interference, which motions were denied. Appellant urged before the Board of Interference Examiners that he should be permitted to make the count proposed by appellee which was held by the Primary Examiner not to be supported by appellant's application. The board refused to consider the question, giving as its reason that to do so would in effect amount to granting an appeal from a decision of the Primary Examiner, citing rule 124.

The invention here involved relates to the construction of a roll-less or no-roll butter churn of the rotatable drum type and of large capacity, comprising a cylindrical wooden drum with oppositely disposed wooden heads or end walls. Within the drum are affixed two or more churning or butter-working shelves adjacent the cylindrical wall and extending from head to head. The drum is horizontally mounted for rotation about its axis upon metal supports or gudgeons attached to the heads. The gudgeons are mounted on rotary shafts or bearings. The drum is rotated at a desired speed by means of a shaft attached to one of the gudgeons. In the operation of a churn such as that described, severe shock strains are undergone by the drum and butter-working shelves as the butter is

repeatedly lifted by the shelves and dropped, so in order that the churn may be durable the drum should be made quite rigid and the shelves be securely mounted in such a manner that the churning and working of the butter will not strain the drum joints, open cracks or otherwise accelerate deterioration of the drum structure. The object of the invention is to achieve those ends by so mounting the shelves in the drum that the strain of the butter loads on the shelves is transmitted directly to the metal gudgeons rather than to the wooden heads of the drum and by forcing the gudgeons inwardly against the drum heads to relieve the strain upon the staves and heads. The means for supporting the butter-working shelves are such that no metal parts which might come in contact with the cream or butter or the water used in cleansing the drum are exposed.

Four counts are involved in the interference, of which count 1 is illustrative and reads as follows: "1. A churn and butter-worker comprising, in combination, a rotatable drum, rotatable supports for rotatably supporting said drum, butterworking and churning shelves within said drum, and means directly supporting said shelves upon said drum supports and directly transmitting all shelf supporting strains to said supports without transmitting said strains to said drum."

In its decision the Board of Interference Examiners analyzed at great length the testimony and exhibits of the parties and held that appellee had proved conception of the involved invention as of November 30, 1936, and reduction thereof to practice at least by the end of May, 1938. The board also held it was not clear that appellant had a conception of the invention defined by any of the counts as early as February, 1937, and awarded to him a reduction to practice as of the early part of July, 1938.

Exhibit 111 is a lead pencil sketch made by appellee, dated November 30, 1936. While it is a free-hand drawing it clearly illustrates the front head of a churn; a butter-working or churning shelf adjacent the cylindrical wall of the churn and mortised into the head; a gudgeon extending to the circular edge of the drum and a tie rod, extending through the shelf, the drum head and the gudgeon, bolted on the outer side thereof. That exhibit was proved by the testimony of appellee amply corroborated by other witnesses to whom it was shown on or shortly after its date. While the exhibit illustrates fragmentary views of a drum and gudgeon assembly it is clear to us that such illustration would be understood by an engineer or draftsman as omitting only portions of the assembly which are structurally similar to those appearing in the exhibit. If a complete drawing was not intended to be symmetrical in horizontal and vertical planes, conventional practice would have required that the missing portions be illustrated. We do not think it can be successfully contended that appellee did not do what the ordinary draftsman would have done in making an illustrative sketch of such a device. While the drawing does not disclose or limit the number of shelves to be mounted in the drum, obviously no less than two would be included. In our opinion exhibit 111 is a complete and definite disclosure of the invention defined in the counts.

Appellant contends that appellee should not receive the benefit of the date of exhibit 111 for the alleged reason that at the time it was dated it was not known how to drill a hole for the tie rod through the length of a 5 or 6 foot shelf such as used by appellee in the churn which he reduced to practice. It is quite true the record discloses that the problem of drilling a hole through such a shelf may have been difficult. This difficulty, however, was due merely to the opinion of the manager of the mill, in which appellee's structures were built, that the drilling of such a hole was not possible. Appellee and other witnesses thought that such a hole could be drilled, and from the record it seems to us that it was not a problem which one skilled in the wood-working art could not have solved by the exercise of ordinary skill. Such solution probably would have been arrived at by procuring a wood-drilling machine which apparently was not then in said mill. The design shown on exhibit 111 was not confined to large churns. Commercial churns had theretofore been made with as small a capacity as 100 pounds of butter and constructed in lengths as short as about 20 inches. Such a churn was actually designed by a Creamery Package Manufacturing Company engineer under the direction of appellee as early as February 25, 1937. That design is in evidence. It is obvious that no difficulty would have been experienced in drilling holes through 20 inch shelves. Therefore it is clear that the board properly awarded appellee the date

of November 30, 1936 for conception of the invention involved in the counts herein. This is much earlier than the earliest date alleged in the preliminary statement of appellant, January 25, 1937.

It appears that the first churn embodying the invention was built by appellee's assignee and shipped to Ida Grove, Iowa, during the first week of May, 1938. The construction of that churn in all essential respects was practically identical with the device illustrated in exhibit 111. After the churn was installed at Ida Grove it was tested, and the witness who installed the churn and made the tests during the said month of May testified that the construction with respect to the drum and method of fastening the gudgeons by means of tie rods extending therethrough and through the heads and entire length of the shelves was a very satisfactory means of supporting the drum and the shelves on the gudgeons and that that construction was followed on all churns subsequently made by the Creamery Package Manufacturing ,Company. The witness testified that about 140 churns had been built embodying that construction. It appears that some small modifications were made in churns after the making of the churn which was installed at Ida Grove, but it does not appear that such changes affected the character of the drum and gudgeon assembly of that churn.

The holes through which the tie rods extended in the Ida Grove churn were not drilled through the length of the shelves for the reason heretofore noted. Instead, a groove was made through the length of each shelf and closed with a strip of wood, leaving a small square channel through which the tie rod was extended, substantially filling the channel. The Ida Grove churn was still in operation at the time the deposition for appellee was taken and while there had been some modifications made in the drum none was made with respect to the rod, shelf, head and gudgeon assembly. It appears that shortly prior to the taking of testimony by appellee the manager of the Ida Grove Creamery, owned by the Great Atlantic and Pacific Tea Company, who was the manager at the time the churn was installed and at all times intervening, removed the nut from the end of the tie rod and observed that the rod extended entirely through the device from gudgeon to gudgeon, thus meeting the limitation as to shelf support of the counts. It is very clear from the evidence of appellee, well corroborated by testimonial and documentary evidence, that the involved device was completely reduced to practice at least by the end of May 1938 as held by the board.

It is not necessary to discuss in detail the reduction to practice of the device of appellant. The churn and the testing thereof relied upon by appellant admittedly did not comprise two gudgeons. The rear mounting of the churn comprised a ring riding on rollers. While the butter-working shelves apparently were attached to the gudgeon at the front of the device through the front head of the churn, the shelves were attached at their rear end to the back drum head. There was no gudgeon or similar means to which they could have been attached at the rear end of that churn. While it may be true, as appellant contends, that fastening the gudgeon at both ends required no change in principle of design from that comprising his tested churn, it is very clear that his tested device does not meet the limitation of the involved counts which requires that the shelf supporting or loading strains be transmitted to the rotatable supports or gudgeons of the drum without transmitting said strains to the drum.

The record for appellant shows that the first churn constructed in accordance with the limitations of the counts herein was not completed and put into use until July, 1938.

Appellant contends that appellee abandoned the invention in issue during the spring of 1937. It is true that appellee in his testimony used the expression "abandoned" in a letter, which is in evidence, to one of the witnesses. We think, as did the board, that the record shows no reason for attaching to that word the technical legal meaning given to it in the patent profession and by the courts. It is clearly shown that the use of that word meant only that the construction which embodied the involved invention would have to be "abandoned" with respect to a certain roll-less churn which was not the device which constituted appellee's reduction to practice. It appears that one of the principal reasons why the invention was omitted from that churn was that the invention required much larger timbers for the shelves than could be obtained at the time, and that the construction of that churn could not be delayed until such timber was obtained.

The timber which was desired could not be obtained locally or on short notice, for the reason that it had to possess particularly high quality, be free from all knots and large pitch pockets, be cut with the grain running in a vertical direction, and had to be ordered from the Pacific coast. In an attempt to contradict the evidence that such timber could not be obtained within a reasonable length of time, appellant introduced evidence relating to purchases of timber by the Cherry-Burrell Corporation. That timber, at the time when appellee required large pieces for incorporating his invention in the churn where the invention might have been embodied, was very much smaller than that required by appellee, and the Cherry-Burrell order was not filled until about four months after it was placed.

Appellant contends that appellee was spurred into activity by reason of receiving knowledge of appellant's work in connection with his roll-less churn construction. This contention has for its alleged support a letter, from a vice-president to the research engineer of the Creamery Package Manufacturing Company, to which was attached a sketch of a Cherry-Burrell roll-less churn installed in the plant of the Blue Valley Creamery at Cedar Rapids, Iowa. The sketch apparently illustrates a churn which in no manner resembles the invention in issue. It depicts a rear view of the device with a large ring in the rear face thereof mounted on roller castings. There is nothing in the record to suggest that appellee or any one associated with him had any knowledge of the ideas of appellant for supporting the butter-working shelves directly on the gudgeons before appellee's reduction to practice.

■ In view of all of the circumstances of record we are of opinion that there was no abandonment of the invention by appellee. Since appellee was the first to conceive the invention and the first to reduce it to practice, the question of diligence is not material. Brogden et al. v. Henry, 69 F.2d 978, 21 C.C.P.A., Patents, 1043.

The appellant in his reasons of appeal alleges error in the decision of the board which held that he could not raise on final hearing his right to make the claim proposed by appellee as heretofore mentioned. In view of our conclusion that appellee has clearly sustained his burden of proof as to priority of invention of the subject matter

defined by the involved counts it is not necessary to consider this question.

■ Accordingly we hold that on the record the board properly awarded priority of invention of the subject matter defined by the counts to the appellee in interference No. 78,490 and therefore the decision of the Board of Interference Examiners therein will be affirmed.

Appeal No. 4753—Interference No. 78,491.

This interference involves the application of appellee, Serial No. 269,587, filed April 24, 1939, and the application of appellant, Serial No. 313,369, filed January 11, 1940. Appellant being the junior party has the burden of proving priority of invention by a preponderance of the evidence.

The invention relates to a butter churn and the subject matter in general is involved in the companion interference No. 78,490, to which we refer for a description of the apparatus.

The issue in this interference is defined in six counts, of which count 3 is typical and reads as follows: "3. A churn and butterworker comprising, in combination, a rotatable drum having drum heads, rotatable drum and shelf supports at each end of said drum for rotatably supporting said drum through said drum heads, a butterworking and churning shelf for working and churning butter within said drum, and rod means passing lengthwise through said shelf and directly fixed to said rotatable supports adjacent each drum head for directly supporting said shelf and said drum heads upon said rotatable supports and directly transmitting shelf loading stresses to said rotatable supports."

Appellee in his preliminary statement alleges the same dates set out in his preliminary statement in the companion interference; namely, that the first drawings of the invention were made on November 30, 1936, and February 25, 1937; that between those two dates he first explained the invention to others; that in January and February, 1938, the first written descriptions of the invention were made by him, and that a full-sized commercial churn was successfully operated during the months of March, April and May, 1938, and that he began to actively exercise reasonable diligence in adapting and perfecting the invention between November 30, 1936, and February, 1937.

Appellant in his preliminary statement alleges that no written description was made of the invention until on or about the time of filing of his application; that the invention was first disclosed to others on or about January 25, 1937; that the first sketches and drawings of the invention were made on or about January 30, 1937; that the making of a model illustrating the invention was completed on or about November 1, 1937; that the invention was reduced to practice on or about November 1, 1937; and that he began actively exercising reasonable diligence in adapting and perfecting the invention on or about January 25, 1937.

■ During the motion period appellant moved to shift the burden of proof alleging that count 5 herein is readable on his application, Serial No. 249,056, filed January 3, 1939, involved in the companion interference. The application of appellant herein is said to be a continuation in part of that application. The motion was dismissed. The question of shifting the burden of proof was raised at final hearing and the Board of Interference Examiners held that appellant was not entitled to the benefit of the filing date of his former application for any purpose in this interference. In his reasons of appeal appellant alleged error in the holding of the board that he was not entitled to the advantage of the filing date of his earlier application with respect to claim 5, but in his brief this alleged error is not relied on. Therefore it will not be considered by us.

Both of the applications involved here disclose but a single construction for supporting the butter-working or churning shelves in the churn. In both applications the devices comprise the running of "tie rods" through the shelves, drum heads and gudgeons and providing a nut on each end of each tie rod for holding the rods in place and forcing the gudgeons inwardly against the adjacent drum heads. Each of the parties discloses in his application tie rods extending from outside the gudgeon at one end of the drum through that gudgeon and the adjoining drum head longitudinally through the entire length of the shelf to be supported and through the drum head and the gudgeon at the opposite end of the drum.

All the counts require rods or tie rods passing lengthwise through the shelves.

By reference to our decision in the companion interference, it will be noted that no churn responding to the counts therein was made and tested by appellant prior to July, 1938, and it will also be noted that the Ida Grove churn of appellee, held to be reduced to practice in May, 1938, responds to the counts of this interference. Therefore in this interference appellee is entitled to the date of November 30, 1936, for conception of the invention and May, 1938, for its reduction to practice.

■ There is nothing in the record of appellant which tends to establish a conception of the invention defined by the counts in this interference prior to July, 1939, and it also appears that appellant never built a churn embodying the construction disclosed in his instant application. Therefore he must be, as was held by the board, restricted to the date of his application, January 11, 1940, for his reduction to practice.

■ The application of appellee was filed April 24, 1939, which is several months prior to July, 1939, which latter date is the earliest available to appellant for conception of the invention. Therefore it must be held that appellee in his interference, regardless of his actual reduction to practice, is entitled to a constructive reduction to practice as of his filing date and therefore priority of invention of the subject matter of all of the counts must be awarded to him.

Appellant in this interference as well as the companion interference contends that appellee abandoned the invention here in issue in 1937. Because of what we have said in the companion interference we hold that contention is unsound.

For the reasons heretofore stated the decision of the board will be affirmed.

■ Subsequent to the filing of the record in this court appellee filed a motion suggesting a diminution of the record by adding thereto certain amendments to his application and a certain Patent Office action. The motion was granted subject to an order of the court that the costs of printing the additional matter requested by appellee should be taxed on final decision.

We are of opinion that the additional matter so certified to the court was unnecessary to a proper decision of the issues in these cases. Accordingly the costs of

printing the same will be taxed against appellee.

The decision of the Board of Interference Examiners in each of the appeals before us, No. 4752 and No. 4753, is affirmed.

Affirmed.

LENROOT, Associate Judge, took no part in the consideration or decision of this case.